[Civ. No. 31851. First Dist., Div. Two. Nov. 18, 1974.]

LEE COE et al., Plaintiffs and Respondents, v.
RENE C. DAVIDSON, as Registrar, etc., Defendant and Appellant.

COUNSEL

Richard J. Moore, County Counsel, Jacob Levitan and William E. Rundstrom, Deputy County Counsel, for Defendant and Appellant.

Joseph Morozumi and Wayne Merrill Collins for Plaintiffs and Respondents.

OPINION

ROUSE, J.—The Registrar of Voters of Alameda County (hereinafter "Registrar") appeals from a judgment granting plaintiffs' petition for a writ of mandate requiring him to accept plaintiffs' declarations of candidacy for the Alameda County Central Committee with a loyalty oath purged therefrom.

The record shows that plaintiffs Coe and others were applicants for candidacy to the office of Alameda County Central Committee, Peace and Freedom Party, in the June 1972 primary election. Plaintiffs tendered declarations of candidacy, as required by law, to the Registrar, defendant Rene C.

Davidson. The Registrar refused to accept plaintiffs' declarations of candidacy because he claimed that they were not substantially in the form prescribed by section 6491 of the Elections Code, in that the following oath had been stricken from the declaration: "I solemnly swear (or affirm) that I am not engaged in one way or another in any attempt to overthrow the government by force or violence, and that I am not knowingly a member of any organization engaged in such an attempt."

Plaintiffs sought a writ of mandate in the superior court to compel the Registrar to accept their declarations of candidacy with the oath stricken therefrom. That court found the following portion of the oath violative of the First and Fourteenth Amendments to the United States Constitution: "and that I am not knowingly a member of any organization engaged in such an attempt." The defendant offered to cure the constitutional defect in the oath by adding a specific intent clause to the membership provison. The court held that the defendant could not correct this part of the oath by such an addition because this would involve "legislating" on the part of the court. The court also held that it could not engage in "legislative surgery" by severing the unconstitutional portion of the oath from any remaining valid portion. The court then ordered that the peremptory writ of mandate issue and that the Registrar accept the declarations of candidacy "as modified," that is, with the entire oath omitted. The Registrar did accept such candidacy declarations for the June 1972 primary election, but appeals from the court's judgment and, more specifically, from the court's refusal to add curative language to the oath as offered by the defendant or, in the alternative, to sever the unconstitutional portions from the rest of the oath.

Plaintiffs applied to this court for an order reinstating and enforcing the judgment of the superior court pending appeal, but the application was denied on March 8, 1974. The plaintiffs then applied to the California Supreme Court and were granted the requested order on March 29, 1974, requiring the Registrar to accept the candidacy declarations without the oath for the June 1974 primary. The Supreme Court then retransferred the case to this court.

This case appears to encompass issues of first impression with regard to the constitutionality of the loyalty oath required by section 6491 of the Elections Code. Although a similar but differently worded oath in the California Constitution[1] was invalidated in *Vogel* v. *County of Los Angeles*

---

[1]Article XX, section 3, California Constitution (cited in *Vogel* v. *County of Los Angeles* (1967) 68 Cal.2d 18, 20 [64 Cal.Rptr. 409, 434 P.2d 961]), reads, in pertinent part, as follows: " 'And I do further swear (or affirm) that I do not advo-

(1967) 68 Cal.2d 18 [64 Cal.Rptr. 409, 434 P.2d 961], that case is not dispositive of the issues in the instant case because here the defendant is challenging the court's failure to take certain action after a finding of unconstitutionality.

There seems to be no question but that the second portion of the oath concerning knowing membership is constitutionally infirm.[2] (See *Keyishian* v. *Board of Regents* (1967) 385 U.S. 589 [17 L.Ed.2d 629, 87 S.Ct. 675]; *Elfbrandt* v. *Russell* (1966) 384 U.S. 11 [16 L.Ed.2d 321, 86 S.Ct. 1238]; *Vogel* v. *County of Los Angeles, supra.*) Also, the Registrar, throughout his brief and at trial, apparently conceded that this part of the oath is constitutionally defective.

█ The issues on appeal, then, are whether or not the trial court erred by refusing to add the defendant's suggested curative language or, in the alternative, severing the unconstitutional portions of the oath from the remainder thereof. The issue as to severability also impliedly requires a determination of the constitutionality of the first or remaining portion of the oath concerning the individual affiant's participation in activity directed at overthrowing the government by force or violence.

The basic issues of this case are not moot even though the election has already taken place. The question of whether the declarations of candidacy used by the Registrar should contain either an amended loyalty oath (adding a specific intent provision to the membership portion), or a severed oath (omitting the membership portion entirely and allowing the remainder to stand) will recur in future elections and therefore is a proper subject for appellate review. (See *Rees* v. *Layton* (1970) 6 Cal.App.3d 815 [86 Cal. Rptr. 268]; *Zeilenga* v. *Nelson* (1971) 4 Cal.3d 716, 719-720 [94 Cal.Rptr. 602, 484 P.2d 578].)

The defendant argues on appeal that the court erred in not allowing the

---

cate, nor am I a member of any party or organization, political or otherwise, that now advocates the overthrow of the Government of the United States or of the State of California by force or violence or other unlawful means; that within the five years immediately preceding the taking of this oath (or affirmation) I have not been a member of any party or organization, political or otherwise, that advocated the overthrow of the Government of the United States or of the State of California by force or violence or other unlawful means except as follows: (If no affiliations, write in the words "No Exceptions") and that during such time as I hold the office of ———— (name of office) I will not advocate nor become a member of any party or organization, political or otherwise, that advocates the overthrow of the Government of the United States or of the State of California by force or violence or other unlawful means.' "

[2] Cases, as cited, require a "specific intent" clause.

addition of curative language to the second half of the oath in the declaration of candidacy. He contends that the term "substantially" in the first sentence of section 6491 of the Elections Code (referring to the required form of the declaration) indicates the Legislature's intent to allow variations in the language or form of the declaration. However, section 6491 (formerly § 2601) was only amended in 1951 (Stats. 1951, ch. 876, § 1, p. 2396) to add the oath to the required declaration of candidacy form. The original 1939 statute (Elec. Code, § 2601 (Stats. 1939, ch. 26, p. 127)) included the term "substantially as follows" and no doubt referred to the general language and format of the rather innocuous questions to be answered on the candidate form.

Even if we conclude that the term refers to every item on the form, including the oath, the addition of curative language thereto may not actually be substantial compliance but rather a substantial departure from the suggested form. The Illinois Supreme Court has stated that the phrase "in substantially the following form" did not require that the language be as exactly prescribed by the statute, but meant that, in the main, it should contain all the essential requirements of the form prescribed. (*The People* v. *Alton Railroad Co.* (1942) 380 Ill. 380, 384 [43 N.E.2d 964, 966].) "Substantial compliance," as the phrase is used in the decisions, means actual compliance in respect to the substance essential to every reasonable objective of the statute. (*Stasher* v. *Harger-Haldeman* (1962) 58 Cal.2d 23, 29 [22 Cal.Rptr. 657, 372 P.2d 649].)

Defendant argues that in any event and independent of the statutory language, the court should have added the proposed curative language. The addition of a "specific intent" requirement to the membership part of the oath would have made that part of the oath constitutional under the *Vogel* holding (*supra*) and the cases cited therein. In *Hirschman* v. *County of Los Angeles* (1952) 39 Cal.2d 698, 702 [249 P.2d 287, 250 P.2d 145], our Supreme Court construed an oath requiring public employees to disclose membership in organizations advocating violent or forceful overthrow of the government as requiring only disclosure of organizations *known* by employees to advocate the illegal aims. Although the statutory oath contained no knowledge requirement itself, it was a necessary and logical conclusion that the oath required disclosure of membership in only "known" subversive organizations as an employee could not be expected to disclose membership in a group not known to be so proscribed. In *Vogel,* our Supreme Court said that "There is nothing in the language of the second paragraph of the oath [see fn. 2, *supra*] required by section 3 of article XX of the California Constitution which even hints that membership is not proscribed unless the

member has a specific intent to further the unlawful aims of the organization. . . ." (P. 25.) The court said that it would not rewrite the oath by construing language into it which was noticeably absent from the statute. (P. 25.) "For this reason, there can be no application here of the rule that if the terms of a statute are reasonably subject to a meaning consistent with the requirements of the Constitution the statute will be given that meaning rather than another in conflict with the Constitution." (*Vogel* v. *County of Los Angeles, supra*, p. 25.) Thus we find that the trial court in the instant case was under no duty nor did it abuse any discretionary authority by failing to add either curative language to the oath or to construe it to say something that it obviously did not. We hold that it was not error for the trial court to refuse to add the proposed curative language.

■ The defendant also contends that the trial court erred in failing to sever the invalid portion of the oath from the remainder thereof and in not allowing any valid portions of the oath to remain in the declarations of candidacy.

■ Generally, unconstitutional provisions do not vitiate the whole act unless they enter so entirely into the scope and design of the law that it would be impossible to maintain it without such obnoxious provisions. (*People* v. *Navarro* (1972) 7 Cal.3d 248, 260 [102 Cal.Rptr. 137, 497 P.2d 481].) The problem actually is a dual one: the Legislature must have intended that the act be severable, and the act must be capable of separation in fact. (*People* v. *Navarro, supra*, p. 260, citing *In re Bell* (1942) 19 Cal.2d 488, 498 [122 P.2d 22]; see also 2 Sutherland, Statutory Construction (4th ed. 1973) § 44.03, p. 338.)

■ Section 48 of the Elections Code states that "If any provision of this code or the application thereof to any person or circumstance is held invalid, the remainder of the code and the application of such provision to other persons or circumstances shall not be affected thereby." Although such language cannot be read as an inexorable command, it is well settled that the use of such language may rightly be considered by the court as a declaration of intention on the part of the Legislature that in so far as lay within its power a separable invalid portion of the act should not destroy the whole. (*Danskin* v. *San Diego Unified Sch. Dist.* (1946) 28 Cal.2d 536, 555-556 [171 P.2d 885].) In this instance it seems reasonable to assume that the Legislature would be better satisfied with part of the oath rather than none at all and impliedly intended such a result.

The question still remaining, however, is whether or not the oath actually is severable. ■ The invalid part of a statute is not inseparable from the

remainder, unless all of the parts are so interdependent that to eliminate the former would destroy the force of the whole statute. (*City of La Mesa* v. *Tweed & Gambrell Mill* (1956) 146 Cal.App.2d 762, 772 [304 P.2d 803].) The unconstitutional portions of a statute should be severed from the remainder if the remaining parts are not dependent on the invalid portions and they can accomplish one or more of the material purposes of the act. (*People* v. *Lewis* (1939) 13 Cal.2d 280, 284 [89 P.2d 388].) ■ The two portions of the oath in section 6491 of the Elections Code are not necessarily interdependent although closely related in wording and purpose. It is manifestly clear that the first portion of the oath can accomplish, albeit to a lesser degree, the same purpose as the entire oath.

The trial court erroneously concluded that it was not necessary to consider plaintiffs' contentions respecting the constitutionality of the first part of the oath in view of its decision not to sever ("engage in legislative surgery") the admittedly invalid portion from the remainder. However, as the foregoing discussion points out, it was incumbent upon the trial court to consider severability. Nonetheless, if the decision of the lower court is proper, the judgment will be affirmed regardless of the correctness of the grounds upon which it was reached. ■ The rule is stated in *Davey* v. *Southern Pacific Co.* (1897) 116 Cal. 325 [48 P. 117], as follows: "The fact that the action of the court may have been based upon an erroneous theory of the case, or upon an improper or unsound course of reasoning, cannot determine the question of its propriety. No rule of decision is better or more firmly established by authority, nor one resting upon a sounder basis of reason and propriety, than that a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion." (P. 329.)

■ Thus it appears that, if the first part of the oath is constitutional, then clearly the trial court erred in failing to make that determination and in failing to sever the invalid portion from the remainder. On the other hand, if the first part of the oath is unconstitutional, then the trial court's decision must be affirmed. Therefore, the final issue to be determined by this court is the constitutionality of the first portion of the oath.

The United States Supreme Court has looked with particular disfavor upon the forms of loyalty oaths in recent years and has thus invalidated a number of them. (See, e.g., *Whitehill* v. *Elkins* (1967) 389 U.S. 54 [19

L.Ed.2d 228, 88 S.Ct. 184]; *Keyishian* v. *Board of Regents, supra; Elfbrandt* v. *Russell, supra.*)[3]

The first part of the oath in the instant case is ambiguous to the extent that the language "in one way or another in any attempt" is susceptible of numerous and perhaps conflicting interpretations. In *Cramp* v. *Bd. of Public Instruction* (1961) 368 U.S. 278 [7 L.Ed.2d 285, 82 S.Ct. 275], the Supreme Court invalidated for vagueness an oath which required the affiant to swear he had never lent his "aid, support, advice, counsel or influence to the Communist Party." The court held that the oath was completely lacking of any terms susceptible of objective measurement. (P. 286 [7 L.Ed. 2d pp. 291-292].) In *Baggett* v. *Bullitt* (1964) 377 U.S. 360 [12 L.Ed.2d 377, 84 S.Ct. 1316], the Supreme Court found an oath based upon the definition of a "subversive person," as set forth in a Washington statute, to be unconstitutionally vague, uncertain and overbroad.[4] (P. 362 [12 L.Ed.2d pp. 379-380].) The court held that a statute which forbids or requires conduct in "terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates due process of law." (P. 367 [12 L.Ed.2d pp. 382-383].) In both cases cited above, *Cramp, supra* at page 285 [7 L.Ed.2d at pages 290-291], and *Baggett, supra* at page 369 [12 L.Ed.2d at pages 383-384], the court willingly accepted an implied requirement of knowledge, but still held that this was not sufficient to save either of the oaths.

---

[3]The United States Supreme Court has utilized various theories in invalidating numerous loyalty oath programs. Among these are: bill of attainder theory—*United States* v. *Brown* (1965) 381 U.S. 437 [14 L.Ed.2d 484, 85 S.Ct. 1707], *Communications Assn.* v. *Douds* (1950) 339 U.S. 382 [94 L.Ed. 925, 70 S.Ct. 674], *United States* v. *Lovett* (1946) 328 U.S. 303 [90 L.Ed. 1252, 66 S.Ct. 1073], and *Cummings* v. *Missouri* (1866) 71 U.S. (4 Wall.) 277 [18 L.Ed. 356]; ex post facto law theory—*Ex parte Garland* (1866) 71 U.S. (4 Wall.) 333 [18 L.Ed. 366], *Cummings* v. *Missouri, supra;* lack of scienter requirement— *Wieman* v. *Updegraff* (1952) 344 U.S. 183 [97 L.Ed. 216, 73 S.Ct. 215]; failure to provide due process right to hearing —*Nostrand* v. *Little* (1960) 362 U.S. 474 [4 L.Ed.2d 892, 80 S.Ct. 840]; unconstitutional shift in burden of proof—*Speiser* v. *Randall* (1958) 357 U.S. 513 [2 L.Ed.2d 1460, 78 S.Ct. 1332]. However, the most appropriate and applicable theory to the instant case is the vagueness and overbroad doctrine. (See, e.g., *Whitehill* v. *Elkins* (1967) 389 U.S. 54 [19 L.Ed.2d 228, 88 S.Ct. 184]; *Keyishian* v. *Board of Regents* (1967) 385 U.S. 589 [17 L.Ed.2d 629, 87 S.Ct. 675], and *Elfbrandt* v. *Russell* (1966) 384 U.S. 11 [16 L.Ed.2d 321, 86 S.Ct. 1238].)

[4]Such definition included "any person who commits, attempts to commit, or aids in the commission, or advocates, abets, advises or teaches by any means any person to commit, attempt to commit, or aid in the commission of any act intended to overthrow, destroy or alter, or to assist in the overthrow, destruction or alteration of, the constitutional form of the government of the United States, or of the state of Washington, or any political subdivision of either of them by revolution, force, or violence; or who with knowledge that the organization is an organization as described in subsections ·(2) and (3) hereof, becomes or remains a member of a subversive organization or a foreign subversive organization." (Wash.Rev.Code § 9.81.010(5).)

It is possible to interpret by implication, as did the court in *Cramp* v. *Bd. of Public Instruction, supra,* and *Baggett* v. *Bullitt, supra,* the requirement of knowledge or scienter in the first part of the oath under scrutiny in the instant case. However, this still leaves the oath with a fatal susceptibility of being applied to an "undefined variety of 'guiltless knowing behavior'" which was condemned by the court in *Baggett, supra,* at page 368 [12 L.Ed.2d at page 383].

From the foregoing discussion, it would seem reasonable for this court to conclude that the oath as required by section 6491 of the Elections Code is unconstitutionally vague and overbroad, whether applied in a severed form or in its entirety. However, the Supreme Court, in a 1951 per curiam decision noticeably lacking in any explanatory discussion, specifically upheld a Maryland oath with exactly the same language as that in the instant case except that it referred to "the attempt" rather than "any attempt" to over-throw the government by force or violence. (*Gerende* v. *Election Board* (1951) 341 U.S. 56 [95 L.Ed. 745, 71 S.Ct. 565].) Subsequently, in *Speiser* v. *Randall* (1958) 357 U.S. 513, 527 [2 L.Ed.2d 1460, 1473-1474, 78 S.Ct. 1332], the court distinguished *Gerende, supra,* by explaining that the oath in *Gerende* was not directed at inhibiting the exercise of First Amendment rights but rather was justified by the compelling interest of protecting the public from having "subversives" hold public office.[5] In *Baggett* v. *Bullitt, supra,* at pages 368-369 [12 L.Ed.2d at pages 383-384], the court referred to the *Gerende* oath in a footnote and *seemingly* reapproved its prior holding in favor of the oath, while in effect further delimiting the per-missible scope and application of any type of loyalty oath. However, in *Whitehill* v. *Elkins, supra,* the court invalidated the same oath that it upheld in *Gerende,* because it refused to read the oath in isolation but rather inter-preted it in connection with an overbroad and vague statute defining "sub-versive persons." In *Whitehill* v. *Elkins, supra,* at page 59 [19 L.Ed.2d at page 232], the court asked the question: "Would a member of a group that was out to overthrow the Government by force or violence be engaged in that attempt 'in one way or another' within the meaning of the oath, even though he was ignorant of the real aims of the group and wholly innocent of any illicit purpose?" The court was obviously unable to answer its own question and the oath in the instant case would seemingly pose it the same difficulty. It is important to note that the court's question in *Whitehill* em-phasized the same language that appears unclear in the section 6491 oath,

[5]The oath in *Gerende* v. *Election Board* (1951) 341 U.S. 56 [95 L.Ed. 745, 71 S.Ct. 565], was required of candidates for office while the oath in *Speiser* v. *Randall* (1958) 357 U.S. 513 [2 L.Ed.2d 1460, 78 S.Ct. 1332], was required of all veterans seeking state tax exemptions.

"in one way or another." If the court in *Whitehill* found the Maryland oath to be vague and overbroad when read in conjunction with the associated statute that helped lead to the oath's downfall, it seems entirely reasonable to consider the same oath as vague and overbroad when read in isolation with nothing to define, delimit, or interpret it.

When left unblemished by the second admittedly unconstitutional section, the scope of the first part of the oath becomes more extensive. With no specific (and limited) membership clause included, the first part of the oath can be read to encompass group membership activity. The language "in one way or another" would seem to leave the first part of the oath open to the same fatal pitfalls as the second part in that it, too, could be interpreted as proscribing a type of association which cannot be banned under the First Amendment. Thus, the language of the first part of the oath impliedly includes the second part, once that portion is stricken. The remaining oath is then left with the same constitutional infirmity in that it fails to include any specific intent or scienter requirement in regards to the implied group membership provision.

*Whitehill* v. *Elkins, supra,* appears to be the Supreme Court's latest word on the type of oaths found in *Gerende* v. *Election Board, supra,* and the instant case. Without specifically overruling *Gerende,* the court has so limited its meaning and effect, both directly and indirectly, that we conclude it can no longer be considered as controlling or dispositive as to issues arising from the type of oaths herein involved. (See, e.g., *Whitehill* v. *Elkins, Baggett* v. *Bullitt, Speiser* v. *Randall,* as well as *Keyishian* v. *Board of Regents* and *Elfbrandt* v. *Russell,* all *supra.*

In the most recent Supreme Court case upholding a state loyalty oath statute,[6] the court said that such oaths may not be utilized to condition state employment in such a manner as to infringe upon protected speech or associational activities. (*Cole* v. *Richardson* (1972) 405 U.S. 676, 680 [31 L.Ed.2d 593, 599-600, 92 S.Ct. 1332].) The court, in upholding the Massachusetts oath,[6] reinforced earlier warnings that an oath may not be so vague that " ' "men of common intelligence must necessarily guess at its meaning and differ as to its application. . . ." ' " (*Cole* v. *Richardson, supra,* pp. 680-681 [31 L.Ed.2d pp. 599-601], citing *Cramp* v. *Bd. of Public Instruc-*

---

[6]The Massachusetts loyalty oath program required all public employees to take the following oath: " 'I do solemnly swear (or affirm) that I will uphold and defend the Constitution of the United States of America and the Constitution of the Commonwealth of Massachusetts and that I will oppose the overthrow of the government of the United States of America or of this Commonwealth by force, violence or by any illegal or unconstitutional method.' " (*Cole* v. *Richardson* (1972) 405 U.S. 676, 677-678 [31 L.Ed.2d 593, 598-599, 92 S.Ct. 1332].)

*tion, supra.*) the oath in the instant case, with the second portion deleted therefrom, is guilty of just such vagueness which the court in *Cole* v. *Richardson, supra* at page 681 [31 L.Ed.2d at pages 600-601], cautioned against when it stated that "uncertainty as to an oath's meaning may deter individuals from engaging in constitutionally protected activity *conceivably* within the scope of the oath." (Italics supplied.)

*Cole* v. *Richardson, supra,* is distinguishable from the instant case in several respects. First, the Massachusetts oath did not require the affiant to analyze any conduct, speech or associational activity in order to determine whether it came within the purview of the oath. The oath in the instant case requires the affiant to make just such an analysis. Second, the court stated that the second clause of the Massachusetts oath was merely redundant of the first clause, i.e., the "uphold and defend" provision, which was essentially lifted from the United States Constitution, article II, section 1, clause 7. (*Cole* v. *Richardson, supra,* p. 683 [31 L.Ed.2d pp. 601-602].) Finally, the court pointed out that it had previously upheld such positive or support oaths. (*Cole* v. *Richardson, supra,* p. 681 [31 L.Ed.2d pp. 600-601].) The oath in the instant case neither parrots constitutional language nor is such a supportive oath, but rather is directed at eliciting a declaration from the affiant that he is not engaged in any type of prohibited conduct. Thus, the basic flaw of the California oath is that a section 6491 affiant cannot be sure as to just what activity he is swearing that he is not engaged in. In short, the Massachusetts oath merely required an affirmance of our constitutional system of government while the oath in the instant case requires the affiant to determine by some form of prescient knowledge just what he is not supposed to be doing.

In the most recent loyalty oath case, the Supreme Court invalidated an Indiana oath which conditioned access to the ballot similarly to the oath in the instant case.[7] (*Communist Party of Indiana* v. *Whitcomb* (1974) 414 U.S. 441 [38 L.Ed.2d 635, 94 S.Ct. 656].) The court held that it was unconstitutional for a state to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or

---

[7]The Indiana statute provided, in part, that " '[n]o existing or newly-organized political party or organization shall be permitted on or to have the names of its candidates printed on the ballot used at any election until it has filed an affidavit, by its officers, under oath, that it does not advocate the overthrow of local, state or national government by force or violence. . . .' " (*Communist Party of Indiana* v. *Whitcomb* (1974) 414 U.S. 441, 442 [38 L.Ed.2d 635, 639, 94 S.Ct. 656].) Of interest is the court's footnote 7 (p. 447 [38 L.Ed.2d p. 641]), which states that the *Gerende* decision was based on a narrowing construction of the statute offered at oral argument and not as it appeared on the books. Also of interest is the majority's rejection of an equal protection argument.

producing imminent lawless action. (P. 448 [38 L.Ed.2d p. 642].) Precision of regulation must be the touchstone in an area so closely touching our most precious freedoms. (P. 447 [38 L.Ed.2d pp. 641-642].) In order to avoid impermissible intrusions upon freedoms guaranteed by the First and Fourteenth Amendments, statutes which proscribe certain conduct or which require broad affirmations of loyalty or allegiance must draw clear distinctions between protected and unprotected activity. (P. 447 [38 L.Ed.2d pp. 641-642].)

It is neither this court's function nor purpose to question the propriety of loyalty oath programs, but rather to determine whether such statutes comply with constitutional requirements and guarantees. In this instance we find that the oath here involved is fatally infirm because of its lack of precision, its resulting vagueness of interpretation, and its susceptibility of being applied to both lawful and unlawful activities alike.

The judgment is affirmed.

Taylor, P. J., and Kane, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 16, 1975.