## WALDMAN *v.* ROHRBAUGH

[No. 100, September Term, 1965.]

*Decided January 7, 1966.*

The cause was argued before HAMMOND, HORNEY, OPPEN-
HEIMER, BARNES and McWILLIAMS, JJ.

*George A. Wilkinson, Jr.,* with whom were *Thomas B. Yew-
ell* and *Haynes, Fitzgerald, Wanner, Haislip, MacHale & Yew-
ell* on the brief, for the appellant.

*Walter J. Murphy, Jr.,* with whom were *H. Mason Welch,
J. Harry Welch, J. Joseph Barse* and *James A. Welch* on the
brief, for the appellee.

HAMMOND, J., delivered the opinion of the Court.

The appellant, plaintiff below, on September 2, 1964, sued
at law to recover damages from his former doctor for, in the
words of his brief, "malpractice through negligence in the con-
duct of an operation performed on plaintiff by defendant on
June 16, 1961 and alleging continuing malpractice through neg-
ligence thereafter in the care and treatment of plaintiff follow-
ing this operation." The operation and treatment were to cure
or alleviate a fracture of the ankle. Counsel for the doctor filed
a plea that he did not commit the wrongs alleged and a plea
of limitations stating that the cause of action set forth did not
accrue within three years, and some months later, apparently
not realizing that they had strayed from customary surround-
ings in the District of Columbia into Maryland, filed a "Mo-
tion for Judgment on the Pleading," a procedure not provided
for in the Maryland Rules or contemplated by Maryland prac-
tice, but authorized by Rule 12 (c) of the Federal Rules of

Civil Procedure. Judge Shook, apparently having become infected with the same federal virus that felled counsel for the doctor, heard arguments on the motion, at which the doctor urged that limitations began to run when the operation was performed on June 16, 1961, this being "the time of the commission of the alleged negligence," and the claimant contended that the right of action accrued only when the patient discovered the injury complained of and the statute began to run as of that time. Judge Shook granted the motion for a reason undisclosed by the record but which the parties agree was that the statute of limitations was a bar. The claimant was not granted leave to amend, after he could not tell the court within half an hour substantially what an amended declaration would allege.

We think that the substantial merits of the case cannot be determined and the purposes of justice advanced unless the case is remanded under Maryland Rule 871 a for further proceedings. The entry of judgment was erroneous in the posture of the case when it was entered. The motion for judgment on the pleadings was not to be treated as a demurrer because the defense of limitations may not be raised in an action at law by demurrer. *Hoover v. Williamson*, 236 Md. 250, 255-56. The motion should not have been treated as one for summary judgment because the facts were not before the court by deposition or otherwise and it was not agreed that there was no dispute as to material facts as contemplated by Maryland Rule 610 if there is to be a summary judgment.

Apart from the procedural errors in entering judgment for the doctor, it may well have been wrong to do so as a matter of substantive law. There is no doubt that as a general rule limitations against a right or cause of action begin to run from the date of the alleged wrong and not from the time that wrong is discovered by the claimant. *Killen v. Geo. Wash. Cemetery*, 231 Md. 337, 343. Although it did not find the rule there applicable under the facts, this Court said in *Hahn v. Claybrook*, 130 Md. 179, 182, that the general rule was that in cases of negligent performance by a physician of a contract or of his neglect of some duty arising therefrom, that the cause of action accrues to the patient and the statute begins to run from "* * * the time of the breach or neglect, not from the time when con-

sequential damages result or become ascertained * * *." The often peculiarly harsh consequences of this theory in cases in which lack of reasonably capable medical knowledge or skill produced serious injurious effects and the victim did not know of the initial wrong until after limitations had run, and so found himself, without any fault of his own, without a remedy (there are a number of such cases in the books), have led many courts and some legislatures to offer exceptions to the general rule which produced (and in some jurisdictions is still producing) this unreasonable and inequitable result in various classes of cases.

> "The effect of * * * [the general rule] has frequently been to bar the plaintiff's claim not only before he sustained any perceptible harm, but before it was feasible for him to learn that the negligence had taken place. * * * Especially where the plaintiff is unqualified to ascertain the imperfection, as in the case of negligent performance of expert or professional services, it seems harsh to begin the period at the time of the defendant's act." *Developments in The Law— Statutes of Limitations*, 63 Harv. L. Rev. 1177, 1201 (1950).

Apart from fraudulent concealment of the facts constituting negligence, which is a statutory exception in Maryland, Code (1957), Art. 57, § 14, and which is not here claimed, two main exceptions to the old—and formerly almost standard—rule have evolved (with some variations in and overlapping of the exceptions). One line of cases construing statutory language like that of Code (1957), Art. 57, § 1 (that limitations begin to run from "the time the cause of action accrued") holds that if the treatment by the doctor is a continuing course and the patient's disease or condition is of such a nature as to impose on the doctor a duty of continuing treatment and care, the statute does not commence running until treatment by the medical man for the particular disease or condition involved has terminated, unless during the course of treatment the patient learns or should reasonably have learned of the harm, in which case the statute runs from the time of knowledge, actual or construc-

tive. There is another line of decisions holding that where there is no continuing course of treatment and the injury does not become immediately known by or apparent to the patient, the statute begins to run in favor of the doctor only when the injury is, or reasonably should have become, known. 41 Am. Jur. *Physicians and Surgeons* § 123 (1942, Cum. Supp. 1965) ; Annot., *Statute of Limitations—Malpractice,* 80 A. L. R. 2d 368, 379 (Termination of treatment) and 377 (Wrongful act or omission as distinguished from injury) ; Annot., 144 A. L. R. 209, 227 and 229; Louisell and Williams, *Trial of Medical Malpractice Cases* § 13.08 (and see 13.09) as to continuing treatment, and § 13.07 as to discovery of the injury.

Since about 1940 there has been a slow but steady trend towards judicial acceptance of the continuing treatment rule. See *Shives v. Chamberlain* (Ore.), 126 P. 2d 28; *Hotelling v. Walther* (Ore.), 130 P. 2d 944; *Williams v. Elias* (Neb.), 1 N. W. 2d 121; *Peteler v. Robison* (Utah), 17 P. 2d 244; *Schmit v. Esser* (Minn.), 236 N. W. 622 (ankle fracture) ; *Thatcher v. DeTar* (Mo.), 173 S. W. 2d 760; *Hundley v. St. Francis Hospital* (Cal. Dist. Ct. App.), 327 P. 2d 131. In *Borgia v. City of New York,* 187 N. E. 2d 777, the Court of Appeals of New York, in a careful opinion, for the first time chose the "continuous treatment" rule as the "fairer one," holding that where a course of treatment which includes wrongful acts or omissions has run continuously and is related to the same original condition or complaint, a right of action accrues only at end of treatment (which must be for same or related illnesses or injuries and not be merely a continuity of physician-patient relationship).

This Court, in construing the words of Maryland's statute of limitations—"the time the cause of action accrued"—in cases not involving malpractice has recognized the theory of the continuation of events, only the last of which starts the running of the statute. In *W., B. & A. Elec. R. R. Co. v. Moss,* 130 Md. 198, 204-05, in which compensation was sought for services rendered over a period of time, the Court said:

> "The general rule seems also settled that in the computation of the statutory period, in cases where there is an undertaking which requires a continuation of

services, or the party's right depends upon the happening of an event in the future, the statute begins to run only from the time the services can be completed or from the time the event happens."

In *Vincent v. Palmer,* 179 Md. 365, 374, a suit by an employee for a share of the profits under an agreement to pay them, the Court said:

"* * * the statute begins to operate at the time the cause of action becomes vested and enforceable, not from the time of the making of the promise. * * * Where a contract does not mention the period of employment, and the claim of the employee is based upon 'continuous employment,' indicating one entire contract, even though the work may be interrupted from time to time, the statute will not run until the completion of the contract."

In our view, if the facts show continuing medical or surgical treatment for a particular illness or condition in the course of which there is malpractice producing or aggravating harm, the cause of action of the patient accrues at the end of the treatment for that particular illness, injury or condition, unless the patient sooner knew or reasonably should have known of the injury or harm, in which case the statute would start to run with actual or constructive knowledge.

The appellant apparently brought his action on the theory of continuing treatment (mixed with a violation of an obligation of the doctor to tell the patient of his negligence in operating and treating), as the early sentence in his brief quoted above suggests since he alleges in his declaration that "* * * the last time the plaintiff consulted the defendant concerning plaintiff's continued disability and pain * * * following the operation was less than three years past immediately preceding the filing of this Declaration * * *," but his almost total reliance below and in this Court was on the theory that limitations did not begin to run until he knew or should have known that the pain and suffering in his ankle was due to improper surgical or medical treatment. The declaration does not specifically state when this point in time occurred but presumably it was when he went

to another doctor. Appellant finds great support for his reliance on the theory of discovery of the injury or harm as a critical point in determining limitations in *Hahn v. Claybrook,* 130 Md. 179, which we referred to earlier as stating the general rule to be that the cause of action in malpractice situations generally, accrues from the time of the doing of the wrongful act and not from the time consequential damages result or become known. In *Hahn* the patient was given a prescription in 1904 for a stomach ailment. She took the prescribed medicine faithfully for years, although she ceased visiting the doctor in 1910 when he told her that only an operation would cure her. In 1908 discoloration of the claimant's skin (from the effect of the medicine) became apparent and this kept worsening up to 1913. Suit was filed against the doctor in 1915. After stating the general rule, this Court said that a line of cases had held that where a wrongful act may or may not be legally injurious to the plaintiff, the statute of limitations does not begin to run against him until he suffers some injury or damages. Our predecessors then said at page 187:

> "The ground of the cause of action in this case, was the discoloration of the plaintiff's skin by the use of the drug called argentum oxide, and the statute began to run from the time of the discovery of the alleged injury therefrom. As stated by the Court below, when she began to be discolored that showed an injury and that was the injury of which she had a right to complain. Then was her cause of action, and that was the time when the alleged injury was apparent, and that was more than four years before 1915."

Generally *Hahn* has been read to hold and mean what the appellant urges it does. Louisell and Williams, *op. cit. supra,* say in § 13.07, "The Running of the Period: From Discovery of the Injury," p. 370: "Maryland may be applying the accrual-at-discovery concept," citing *Hahn.* 12 Wyo. L. J. 30, 34, in a discussion entitled "The Statute of Limitations in Actions for Undiscovered Malpractice," says:

> "The most modern view holds that the statute of limitations in a malpractice action does not commence

to run until the negligence is discovered, or reasonably should be discovered. The discovery rule was probably first advocated in the case of *Hahn v. Claybrook,* which involved a discoloration of the skin through excessive doses of argentum oxide. The court followed the discovery rule, but held that the plaintiff should have discovered the injury more than three years prior to the commencement date of the action."

Judges Thomsen and Northrop of the District Court of Maryland have indicated in *Jackson v. United States,* 182 F. Supp. 907, 911, and in *Southern Maryland Oil Company v. Texas Company,* 203 F. Supp. 449, respectively, that they share this view of *Hahn.* Judge Northrop said in the latter case at page 452 that *Hahn* "* * * held that the running of the statute commenced, not from the date of the first prescription, but from the time when the first trivial injuries were noted." See also *Callahan v. Clemens,* 184 Md. 520, 527, where Judge Henderson, for the Court, cited *Hahn* for the proposition that where there had been negligent erection of a stone wall on another's land in 1929 but no realization or discovery of the claimed defects until 1939 that the cause of action accrued in 1939.

An increasing number of states are following the discovery rule in various factual situations. California took this position in 1936 where a foreign substance was negligently left in a patient's body by a physician, in *Huysman v. Kirsch,* 57 P. 2d 908, and the patient was ignorant of the fact; in more recent cases this holding has been extended to other kinds of malpractice. *Agnew v. Larson* (Cal. Dist. Ct. App.), 185 P. 2d 851. The Supreme Court in a silicosis case under the Federal Employers' Liability Act began the running of the statute with the discovery of the injury in *Urie v. Thompson,* 337 U. S. 163, 93 L. Ed. 1282, and the Court of Appeals of the Fifth Circuit reached a similar result in a case of tuberculosis in *Reid v. United States,* 224 F. 2d 102, where there had been a negligent failure to advise that the X-rays showed the disease. See also *Thomas v. Lobrano* (La. Ct. App.), 76 So. 2d 599; *Kozan v. Comstock* (5th Cir., applying Louisiana law), 270 F. 2d 839; *Ayers v. Morgan* (Pa.), 154 A. 2d 788; *City of Miami v. Brooks* (Fla.), 70 So. 2d 306. New Jersey and West Virginia have recently,

in soul-searching opinions, reversed their prior adherence to the general rule and applied the time of discovery date. New Jersey did it in *Fernandi v. Strully*, 173 A. 2d 277 (a foreign object had been left in the patient), the Court saying that most courts, including those of New Jersey, had held a plaintiff might be barred although during the period of limitations he did not know or have reason to believe he had a cause of action and that this result was based on the belief that the obvious injustice to the patient was outweighed by the broader public policy considerations as to repose and stale claims. The Court cited some twenty cases from some ten different jurisdictions which had departed from the general rule and applied the time of discovery rule. The Court then quoted 1 Wood *Limitation of Actions,* 685, 686 (4th ed. 1916) that "the question when a cause of action accrues is a judicial one, and to determine it in any particular case is to establish a general rule of law for a class of cases, which rule must be founded on reason and justice," and held that in foreign object or substance cases limitations fairly and justly should run from the time of discovery of the right of action, its previous decision to the contrary notwithstanding.

The Supreme Court of West Virginia in *Morgan v. Grace Hospital, Inc.,* 144 S. E. 2d 156, reached the same result on similar facts, expressly overruling its previous decisions to the contrary.

On reason and principle and the authority of *Hahn* and cases of like import elsewhere which have been cited and referred to, we conclude that the right of action for injury or damage from malpractice may accrue when the patient knows or should know he has suffered injury or damage. In many cases he will or should know at the time of or soon after the wrongful act that he has been the victim of negligent medical care; in other settings of fact it may be impossible for him, as a layman, unskilled in medicine, reasonably to understand or appreciate that actionable harm has been done him. If this is fairly the fact, we think he should have the statutory time from the moment of discovery, the moment he knows or should know he has a cause of action, within which to sue.

Upon remand, the appellant shall have the opportunity to

amend his declaration to set out with sufficient particularity the theory or theories of his right to recover under the principles we have discussed, which the facts he can later prove will support, and the chance to have his case considered and determined under the customary procedures.

*Case remanded without affirmance or reversal for further proceedings, costs to abide the result.*