600 A.2d 1133

Gregory CONAWAY

v.

STATE of Maryland, et al.

No. 337, Sept. Term, 1991.

Court of Special Appeals of Maryland.

Jan. 31, 1992.

Samuel D. Hill (Hill, Johnson, Foley, Stone & Miles, and David Kimmelman, Towson, on the brief), for appellant.

Lawrence P. Fletcher–Hill, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for appellee, State of Md.

Daniel Karp (Allen, Johnson, Alexander & Karp, on the brief), Baltimore, for appellee, Frank Basil, Inc.

(Susan L. Howe, Staff Atty., Baltimore, on the brief), for appellee, Md. Div. of Correction.

Argued before ALPERT, ROSALYN B. BELL, and DAVIS, JJ.

ROSALYN B. BELL, Judge.

While a prisoner in the Maryland Division of Correction, Gregory Conaway was injured. Believing that the State's treatment for his injuries was negligent, Conaway filed a claim for damages, pursuant to the Maryland Tort Claims Act (MTCA). The State denied Conaway's claim on the grounds that the notice provided to it was defective. This determination was upheld by both the Health Claims Arbitration Office (HCAO) and the Circuit Court for Baltimore City.

During the pendency of the HCAO proceedings, Conaway learned that Frank Basil, Inc. had been the health care provider under a contract with the State when Conaway was injured. Conaway therefore amended his HCAO complaint to include Basil, but did not do so until after three

years had passed from his original claim with the State. Both the HCAO and the circuit court granted Basil's motion to dismiss Conaway's claim as barred by the statute of limitations.

In this appeal, Conaway contends that:

— the circuit court erred in granting the State's motion to dismiss because Conaway filed a claim with the State within the time period called for in the Maryland Tort Claims Act; and

— the circuit court erred in granting Basil's motion to dismiss because Conaway did not learn of his claim against Basil until December of 1989.

As to Conaway's claim against the State, we will reverse and remand the case to the circuit court. With respect to his claim against Basil, however, we will affirm the judgment of the circuit court.

## STATEMENT OF FACTS

Conaway suffered a broken finger in May of 1986 while he was incarcerated in the Maryland Division of Correction Brockbridge facility at Jessup. Although the State provided him treatment for his injury, Conaway was left with a permanently disfigured and painful ring finger on his right hand. In September of 1986, through an attorney, Conaway filed a claim against the State, allegedly pursuant to the MTCA. Conaway's "claim" did not contain a demand for specific damages. Subsequently, over a two-year period, Conaway's attorney endeavored, with little success, to obtain from the State the medical records necessary to substantiate Conaway's claims. Finally, in November of 1988, Conaway, now in possession of the medical records, attempted to engage the State in settlement discussions. Although its agents were in contact with Conaway's attorney for over two years following the September 1986 letter, the State now denied Conaway's claim, alleging that the September 1986 letter did not meet the requirements of the MTCA, as the claim did not demand specific damages.

Conaway then filed a claim with the HCAO. The State moved to dismiss, again contending that the September 1986 letter did not comply with the MTCA. Alternatively, the State alleged that Conaway had not exhausted his administrative remedies, as he did not file a claim with the Inmate Grievance Commission (IGC). In investigating this assertion, Conaway's attorney learned, for the first time, that the medical services provided to Conaway were not provided by state employees, but by a company with which the State contracted to provide medical care to inmates. As a result, Conaway could not have filed a claim with the IGC because the grievance was not with state employees, but with individuals under contract to the State. After learning this information, Conaway then amended his HCAO complaint to include PHP Healthcare Corporation (PHP), the State's present service provider.

While the State's motion to dismiss was pending before the HCAO, Conaway's attorney learned that, although PHP was the current health care provider for the State's prisons, it did not begin its contract with the State until July 1, 1986. At the time Conaway was originally treated, therefore, it was not PHP, but Frank Basil, Inc., which was under contract with the State. For yet another time, Conaway amended his complaint, adding Basil as an additional defendant.

On October 2, 1990, the HCAO granted the State's and Basil's motions to dismiss, ruling that Conaway's September 1986 letter did not meet the requirements of the MTCA, and that Conaway's claim against Basil was barred by the statute of limitations. The HCAO later granted summary judgment in favor of PHP.

Conaway then notified the HCAO of his rejection of the decision and filed his complaint in the Circuit Court for Baltimore City against the State and Basil. The State and Basil filed motions in circuit court similar to those filed with the HCAO. Conaway filed answers to those motions. On January 30, 1991, the motions judge granted the motions of

the State and Basil after a short hearing. Conaway then noted an appeal to this Court.

## THE MARYLAND TORT CLAIMS ACT
### —Substantial Compliance—

Appellant first contends that the trial court erred in ruling that his September 1986 letter did not meet the requirements of the MTCA, specifically Md. State Gov't Code Ann., §§ 12–106—107 (1984, 1991 Cum.Supp.). Section 12–106(b) states:

"(b) *Claim and denial required.*—A claimant may not institute an action under this subtitle unless:

"(1) the claimant submits a written claim to the Treasurer or a designee of the Treasurer within 180 days after the injury to person or property that is the basis of the claim;

"(2) the Treasurer or designee denies the claim finally; and

"(3) the action is filed within 1 year after the claim is denied finally or 3 years after the cause of action arises, whichever is later."

Section 12–107(a) sets forth the requirements for a "claim":

"(a) *Form.*—A claim under this subtitle shall:

"(1) contain a concise statement of facts that sets forth the nature of the claim, including the date and place of the alleged tort;

"(2) demand specific damages;

"(3) state the name and address of each party;

"(4) state the name, address, and telephone number of counsel for the claimant, if any; and

"(5) be signed by the claimant, or the legal representative or counsel for the claimant."

Appellant argues that, although his September 1986 letter to the State Treasurer did not contain a demand for specific damages, as required by § 12–107(a)(2), the letter was a sufficient statement of a "claim" to meet the requirements

of § 12–106(b). Implicit in this argument is the notion of "substantial compliance" with the "claim" requirements of the MTCA.

The State, on the other hand, proffers several reasons to support its assertion that the September 1986 letter was not a sufficient statement of a claim for purposes of the MTCA. First, because the MTCA waives the State's sovereign immunity, the State argues that such waiver should be construed strictly. Second, the State argues, cases interpreting the Federal Tort Claims Act (FTCA) have, with virtual unanimity, concluded that the failure to demand specific damages is fatal to a claimant's cause of action.

For the reasons which follow, we reject the State's arguments. We will hold that appellant's September 1986 letter substantially complied with the requirements of §§ 12–106 and 12–107. As a result, we hold that the circuit court erred in dismissing appellant's claim against the State.

■ The General Assembly has waived the State's sovereign immunity for tort claimants who satisfy the requirements of the MTCA. A threshold requirement, per §§ 12–106—107, is the presentation of a claim to the State Treasurer within 180 days of the injury. The Court of Appeals has recently held that this provision is a condition precedent to filing suit against the State. *Simpson v. Moore,* 323 Md. 215, 225, 592 A.2d 1090 (1991). The analysis of the Court of Appeals in *Simpson* provides the basis for our decision here.

In that case, a police officer was killed in a helicopter accident while on duty in 1986. Just short of three years later, the officer's surviving spouse,. Simpson, filed an action for wrongful death and survivor's benefits. In that action, Simpson alleged that the accident resulted from the negligence of two other officers, and that the State of Maryland should be liable for damages. Simpson had filed no claim of any kind with the State within 180 days. The State filed a motion to dismiss the complaint, contending that the filing of a claim with the State Treasurer within

180 days was a condition precedent to the State's waiver of sovereign immunity. The trial court granted the State's motion, and Simpson appealed.

According to the legislative history, the 180–day rule in § 12–106 was derived from Md.Cts. & Jud.Proc.Code Ann., § 5–306 (1974, 1984 Repl.Vol.),[1] which set time limits for making claims against a county or municipal corporation. As a result, argued Simpson, the Legislature, in amending § 12–106, must have also intended to incorporate the "good cause" and "absence of prejudice" criteria, adopted as § 5–306(c) in 1972, for waiver of the notice requirement.[2] Section 12–106 itself, however, unlike § 5–306, makes no mention of any exceptions to the 180–day notice requirement.

The Court of Appeals rejected Simpson's argument, holding that "[i]n adopting a 180–day requirement without also adopting any exception to that requirement, the legislature has imposed a condition precedent which carries with it the rigors of the pre–1972 law governing notice to municipalities." *Simpson,* 323 Md. at 225, 592 A.2d 1090. Thus, because Simpson provided no notice at all to the State within the 180 days mandated by § 12–106(b), his claim was barred.

While Simpson provided no notice to the State, appellant in this case provided written notice to the State within the 180–day period mandated by § 12–106(b). The question here, therefore, is whether that notice was sufficient. Taking the requirements of § 12–107 literally, there is little question that appellant's claim was insufficient; he did not include a demand for specific damages, as required by § 12–107(a)(2). The question remains, however, (1) whether substantial compliance with the condition precedent is appli-

1. Now Md.Cts. & Jud.Proc.Code Ann. § 5–404 (1974, 1989 Repl.Vol., 1991 Cum.Supp.).

2. Prior to the adoption of § 5–306(c), the Court of Appeals had held that the notice requirement was a mandatory condition precedent to the filing of a suit against a county or municipal corporation. *Rich v. City of Baltimore,* 265 Md. 647, 650, 290 A.2d 777 (1972).

cable; and (2) whether appellant's September 1986 letter substantially complied with the requirements of the MTCA. We shall answer both questions in the affirmative.

 *Simpson* clearly directs that the 180–day limit in § 12–106(b) is to be interpreted similarly to the pre–1972 statute governing notice of claims for damages against counties and municipal corporations (then Art. 57, § 18). Initially, therefore, we must look to the decisions of the Court of Appeals interpreting Art. 57, § 18. Although the Court of Appeals firmly held that the notice provision of § 18 was mandatory, *see* Note 2, *supra*, it also held that substantial compliance with the notice provisions could be sufficient, even where there was a failure to comply with the literal requirements of the statute. *Grubbs v. Prince George's County*, 267 Md. 318, 324–325, 297 A.2d 754 (1972); *Loewinger v. Prince George's County*, 266 Md. 316, 318, 292 A.2d 67 (1972); *Jackson v. Board of County Commissioners of Anne Arundel County*, 233 Md. 164, 168, 195 A.2d 693 (1963). Based on the decision of the Court of Appeals in *Simpson*, 323 Md. at 225, 592 A.2d 1090, we hold that substantial compliance with the requirements of the MTCA is sufficient to satisfy the condition precedent to the State's waiver of sovereign immunity.[3]

 The question remains, however, whether appellant's September 1986 letter to the State Treasurer sufficiently complied with the requirements of § 12–107 so as to constitute substantial compliance. In *Jackson*, 233 Md. at 168, 195 A.2d 693, the Court of Appeals held:

---

**3.** Because the plaintiff in *Simpson* filed no claim at all with the State within the 180–day period mandated by § 12–106, the issue of substantial compliance was not before the Court of Appeals in that case. In his conclusion, however, Judge McAuliffe clearly suggested that substantial compliance, in the right case, would apply to § 12–106. "The doctrine of substantial compliance has no application to an outright failure to comply...." *Simpson*, 323 Md. at 228, 592 A.2d 1090. Such a holding is also consistent with § 12–102, which directs that the MTCA is to be "construed broadly, to ensure that injured parties have a remedy."

"If the purpose of the statute is fulfilled, the manner of the accomplishment of the fulfillment has not generally been tested too technically. In such cases substantial compliance generally is held to be enough."

The Court of Appeals therefore held that service of a claim by regular mail, rather than in person or by registered mail as called for by Art. 57, § 18, constituted substantial compliance with the requirements of the statute.

■ The appellate courts of this State have never, as far as we can tell, addressed the issue of substantial compliance in the context of a deviation from the required form or content of a notice, rather than deviation from the method of delivery, as in *Jackson* and *Grubbs*. There is a great deal of support, however, in the decisions of other states for the proposition that, where compliance with a statutory requirement is technically defective, but nevertheless accomplishes the purposes of the statute itself, the actions taken may be held sufficient as being in substantial compliance with the statutory requirements. *Morkunas v. Anchorage Telephone Utility*, 754 P.2d 1117, 1120 (Alaska 1988) (conduct that falls short of strict compliance with statutory requirements, but which "affords the same protection that strict compliance would offer"); *Opinion of the Justices*, 275 A.2d 558, 562 (Del.1971) ("when there has been a partial compliance and it is reasonable to conclude that the objective sought ... has been as fully attained ... as though there had been a full and literal compliance"); *Superior/Ideal, Inc. v. Board of Review of the City of Oskaloosa*, 419 N.W.2d 405, 407 (Iowa 1988) (compliance "in respect to essential matters necessary to assure the reasonable objectives of the statute"); *City of Lenexa v. City of Olathe*, 233 Kan. 159, 660 P.2d 1368, 1373 (1983) ("compliance in respect to the essential matters necessary to assure every reasonable objective of the statute"); *Rogers v. Roberts*, 300 Or. 687, 717 P.2d 620, 622 (1986) (en banc) ("compliance in respect to the essential matters necessary to assure every reasonable objective of the statute"); *Radtke v. City of Milwaukee*, 116 Wis.2d 550, 342 N.W.2d 435, 438

(1984) (compliance sufficient to "fulfill the objective of the statute"); *Smith v. State,* 364 So.2d 1, 9 (Ala.Crim.App. 1978) ("whether the statute has been followed sufficiently so as to carry out [its] intent"); *Coe v. Davidson,* 43 Cal.App.3d 170, 117 Cal.Rptr. 630, 633 (1974) ("actual compliance in respect to the substance essential to every reasonable objective of the statute"); *Indiana Dept. of Public Welfare .v. Clark,* 478 N.E.2d 699, 702 (Ind.App.1985), *cert. denied* 476 U.S. 1170, 106 S.Ct. 2893, 90 L.Ed.2d 980 (1986), *overruled on other grounds, Felder v. Casey,* 487 U.S. 131, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988) ("substantial compliance requires that the purpose of the statute be served"); *Bernstein v. Board of Trustees of Teachers' Pension and Annuity Fund,* 151 N.J.Super. 71, 376 A.2d 563, 566 (1977) ("general compliance with the purpose of the statute"); *Santos v. Guerra,* 570 S.W.2d 437, 440 (Tex.Civ.App.1978) ("compliance with the essential requirements ... of a statute"); *Application of Santore,* 28 Wash.App. 319, 623 P.2d 702, 707 (1981) ("actual compliance in respect to the substance essential to every reasonable objective of the statute"). The common theme of these decisions is the focus on the intent, purpose or objective of the statute in question. In this respect, they are consistent with the Maryland Court of Appeals holding in *Jackson,* 233 Md. at 168, 195 A.2d 693, quoted *supra.* Furthermore, we have found no cases in Maryland or other jurisdictions which have entirely rejected the principle of substantial compliance in this context.

Two of the decisions cited above are particularly relevant here, in that they address substantial compliance with statutes similar to § 12–106. In *Clark,* the Indiana Court of Appeals held that substantial compliance with the notice provisions of the Indiana Tort Claims Act would be sufficient:

> "Substantial compliance requires that the purpose of the notice requirement be served and that the claimant comply with his affirmative duty of delivering some writing to the agency.
>
> \* \* \* \* \* \*

The purpose of the [notice] requirement is to inform the state agency of the circumstances surrounding the incident so that it can investigate, determine its possible liability and prepare a defense to the claim."

*Clark,* 478 N.E.2d at 702–703. Although not found in that case, the Indiana Court clearly indicated that substantial compliance with the notice provisions of a state tort claims act could suffice.

In *Radtke,* the Wisconsin Supreme Court held that substantial compliance with a statutory notice provision for claims against municipalities was sufficient:

"To decide whether there was substantial compliance in this case, we must determine whether the notice of injury actually given contained sufficient elements of the notice requirements to fulfill the objective of the statute. A notice of injury statute, such as sec. 81.15, seeks to provide the proper authorities with an opportunity to investigate a claim which is not stale. The investigatory objective can be best fulfilled if the proper authorities have requisite and timely notice of the facts and circumstances of the incident."

*Radtke,* 342 N.W.2d at 438. Both *Radtke* and *Clark* focus on the actual steps taken to comply with the statute, and whether those steps effectuated the purpose behind the notice requirement of the statute. The intent of the MTCA is therefore of paramount importance to our analysis here.

Previous cases have held that the intent of the MTCA may be gleaned from the parallel provisions of the FTCA, where the two statutes are consistent. *Gardner v. State,* 77 Md.App. 237, 247, 549 A.2d 1171 (1988). The federal courts have held that the notice requirements of 42 U.S.C.A. § 2675(a) (1965, 1991 Cum.Supp.), from which the comparable MTCA provisions are drawn, are satisfied when the claimant "promptly informs the relevant agency of the accident so that it may investigate the claim and respond either by settlement or by defense." *Adams v. United States,* 615 F.2d 284, 289 (5th Cir.), *clarified,* 622 F.2d 197 (5th Cir.1980). This statutory purpose is consistent with the

analysis of the Indiana and Wisconsin Courts in *Clark* and *Radtke* respectively, quoted *supra.* We hold that the notice provisions of the MTCA are satisfied when the State has "requisite and timely notice of the facts and circumstances" of the incident giving rise to the claim. *Radtke,* 342 N.W.2d at 438.

—Appellant's Failure to Demand Specific Damages—

Relying on an analogy to the FTCA, the State raises two points to support its argument that appellant's failure to demand specific damages should bar his claim. First, argues the State, we should follow federal cases interpreting the FTCA and interpret the MTCA strictly. We do not agree.

The FTCA itself provides no specific guidance or direction for courts faced with interpreting it. The State, however, urges us to look to federal cases interpreting the FTCA. These cases have generally held that, because the FTCA constitutes a waiver of the federal government's sovereign immunity, its provisions should be interpreted strictly. *Taumby v. United States,* 902 F.2d 1362, 1364 (8th Cir. 1990); *Keene Corp. v. United States,* 700 F.2d 836, 841 (2d Cir.1983); *Three–M Enterprises, Inc. v. United States,* 548 F.2d 293, 295 (10th Cir.1977); *Commonwealth of Pennsylvania v. National Ass'n of Flood Insurers,* 520 F.2d 11, 20 (3rd Cir.1975). Section 12–102 of the MTCA, on the other hand, specifically directs that "[t]his subtitle shall be construed broadly, to ensure that injured parties have a remedy." This statutory directive directly contradicts the State's first argument here, that the requirements of the MTCA should be interpreted strictly.

The State also argues that we should follow numerous federal circuit court decisions which hold that the failure of a tort claimant to submit a claim for specific damages is fatal to the sufficiency of that claim. *See, e.g., Adkins v. United States,* 896 F.2d 1324, 1326 (11th Cir.1990) (*per curiam*); *Conn v. United States,* 867 F.2d 916, 918–919 (6th Cir.1989); *Farmers State Sav. Bank v. Farmers Home*

*Admin.,* 866 F.2d 276, 277 (8th Cir.1989); *GAF Corp. v. United States,* 818 F.2d 901, 919 (D.C.Cir.1987); *Adams v. United States Dep't of Housing & Urban Dev.,* 807 F.2d 318, 320–321 (2d Cir.1986). Again, we do not agree.

The State's reliance on these federal cases is flawed. While the FTCA and MTCA are similar in general intent and provisions, the two Acts differ in at least four respects which are relevant for present purposes. First, although both the MTCA and FTCA require a specific demand for damages, the FTCA also states that, once the agency denies the claim, the claimant may not file a lawsuit for a greater amount of damages than was claimed before the agency. 28 U.S.C.A. § 2675(b) (1965, 1991 Cum.Supp.). This provision provides the agency with a certain degree of precision in investigating the claim, in that it will know the magnitude of the government's potential liability at all times. The MTCA provides no such limitation on the claimant's eventual lawsuit for damages; thus, the specific demand for damages, so critical in federal cases, is of far less relevance in Maryland.

Second, the deadline for filing a claim under the FTCA is two years, while the MTCA requires that a claim be filed within 180 days of the event giving rise to the claim. *Compare* 28 U.S.C.A. § 2401 (1978, 1991 Cum.Supp.), and Md.State Gov't Code Ann., § 12–106 (1984, 1991 Cum. Supp.). Because the FTCA provides a much longer period in which to file a claim, it is logical to require greater precision and specificity in the details of that claim. In Maryland, on the other hand, it is often difficult if not impossible to identify all possible details of a claim within 180 days. This distinction further weakens the State's reliance on an analogy to the federal cases.

Third, as discussed *supra,* construction of the FTCA and the MTCA are governed by vastly different standards. Federal courts, in the absence of any legislative direction, have uniformly interpreted the FTCA strictly. The Maryland Legislature has directed, however, in § 12–102, that

the MTCA be "construed broadly, to ensure that injured parties have a remedy."

A final distinction between the FTCA and MTCA is that, while the federal courts have interpreted the claim requirements of the FTCA as *jurisdictional* prerequisites to the filing of a lawsuit in federal court, *see United States v. Burzynski Cancer Research Institute*, 819 F.2d 1301, 1306 (5th Cir.1987), *cert. denied sub. nom. Wolin v. United States*, 484 U.S. 1065, 108 S.Ct. 1026, 98 L.Ed.2d 990 (1988); *Henderson v. United States*, 785 F.2d 121, 123 (4th Cir. 1986); *Lykins v. Pointer, Inc.*, 725 F.2d 645, 646 (11th Cir.1984), the Court of Appeals in *Simpson* rejected this approach, opting for a more flexible approach. *Simpson*, 323 Md. at 229 n. 4, 592 A.2d 1090. Thus, while federal courts have chosen to refrain from judicial interpretation of the claim requirements of the FTCA, the Court of Appeals appears to have mandated a more active role for the Maryland courts in interpreting the claim provisions of the MTCA, in keeping with the legislative directive to construe the statute broadly.

As a result of these differences between the state and federal tort claims acts, we do not agree with the State's second argument, that we should rely on federal cases in this context. Although *Gardner*, 77 Md.App. at 247, 549 A.2d 1171, suggests that federal case law is persuasive on the interpretation of a state statute where the two statutes are similar in language and intent,[4] and although the federal cases cited by the State are controlling on the interpretation of the FTCA, they do not control the interpretation of the MTCA where the MTCA and FTCA differ significantly

---

**4.** Although *Gardner* addressed the interpretation of § 12–106(b), the same statute at issue here, we note that the question in that case was far narrower and unrelated to the issues in this case. In *Gardner*, we held that an amended complaint did not relate back to an original complaint filed before the six month period for the State to respond to a claim had run. *Gardner*, 77 Md.App. at 246, 549 A.2d 1171. Furthermore, *Gardner* was decided before the decision of the Court of Appeals in *Simpson, supra.*

with respect to the requirement of a claim for specific damages.

Even under the more strict interpretation of the FTCA, a claimant's failure to include a demand for specific damages has not always been held to bar his or her claim. The case of *Blue v. United States*, 567 F.Supp. 394 (D.Conn.1983), is particularly relevant to the facts here. In that case, a group of prisoners in a federal prison brought a civil suit against the federal government for injuries incurred in a fire at the prison. After two phases of the trial were completed, but before the court's decision was rendered, the government moved to dismiss the claim of Tyson, one of the prisoners, on the grounds that he failed to submit a claim for specific damages. Tyson did, however, submit a written claim (a sworn statement) in which he described his injuries and alleged the negligence of prison officials as the cause of those injuries. The government investigated the claims of Tyson and other prisoners; it identified Tyson as one of those injured in the fire, and its investigators interviewed Tyson.

With respect to Tyson's failure to include a demand for specific damages, the court ruled:

"The absence of a statement of the amount of the claim might, in the typical case, be sufficient reason to dismiss a complaint. However, given the particular facts of *this* case, to grant the government's motion to dismiss on the sole ground that this plaintiff failed to submit a demand for a sum certain in damages would work a grave injustice, elevate form over substance, and subvert the beneficial purpose of § 2675(a) to provide 'for more fair and equitable treatment of private individuals and claimants when they are involved in litigation with their government.'

"In this case, the plaintiff was at all relevant times a ward of the government; the fact, nature and extent of his injuries were well known to the government; the medical data regarding Tyson's injuries were peculiarly within the control of the government as Tyson, along

with the other inmates and unlike more typical Federal Tort Claims Act litigants, was not free—nor did he have the resources—to obtain consultation or treatment by a private physician."

*Blue*, 567 F.Supp. at 398, quoting S.Rep. 1327, 89th Cong.2d Sess. (1966), U.S.Code Cong. & Admin.News, pp. 2515–2516 (citations omitted). The Court therefore denied the government's motion to dismiss.

*Blue* makes clear that, under circumstances indistinguishable from the instant case, and even under the more stringent provisions of § 2675(a) of the FTCA, a claimant's failure to include a demand for specific damages in his claim is not necessarily fatal to that claim. Thus, regardless of the distinction between the MTCA and FTCA, *Blue* suggests that there are some circumstances in which less than literal compliance with the requirements of the FTCA may suffice.

We hold that appellant's September 1986 letter, although it did not literally comply with all of the requirements of § 12–107(a) of the MTCA, provided the State with sufficient written notice of the circumstances of the underlying incident to enable it to "investigate the claim and respond either by settlement or defense." *Adams*, 615 F.2d at 289. *See Clark*, 478 N.E.2d at 702–703; *Radtke*, 342 N.W.2d at 438. No better argument can be found in support of this conclusion than the conduct of the State upon receipt of appellant's claim. For over two years, the State corresponded with appellant's attorney, who was seeking the medical records to verify that his client had a viable claim. At no time during those two years did the State indicate, or its behavior suggest, that it was in any way handicapped in investigating appellant's claim because of some deficiency in the September 1986 letter. Because appellant's notice served the purpose of the statute, we hold that he substantially complied with the requirements of § 12–107(a) of the MTCA. The circuit court therefore erred in granting the State's motion to dismiss.

## THE CLAIM AGAINST BASIL

The circuit court also ruled that appellant's claim against Frank E. Basil, Inc., the health care provider for the Maryland Division of Correction at the time of appellant's injuries, was barred by the statute of limitations. On appeal, appellant asserts that this ruling was error. He contends that, under the discovery rule, his claim against Basil did not accrue until December of 1989, when he learned of Basil's involvement in the case. We do not agree.

█ Maryland Cts. & Jud.Proc.Code Ann., § 5–109(a) (1974, 1989 Repl.Vol.) states:

"(a) *Limitations.*—An action for damages for an injury arising out of the rendering of or failure to render professional services by a health care provider ... shall be filed within the earlier of:

"(1) Five years of the time the injury was committed; or

"(2) Three years of the date the injury was discovered."

This statutory provision incorporates the "discovery rule" first applied by the Court of Appeals in *Waldman v. Rohrbaugh,* 241 Md. 137, 145, 215 A.2d 825 (1966):

"[W]e conclude that the right of action for injury or damage from malpractice may accrue when the patient knows or should know he has suffered damage." [5]

In its most recent discussion of the discovery rule, the Court of Appeals stated:

"[A] plaintiff is only on inquiry notice, and thus the statute of limitations will begin to run, when the plaintiff has 'knowledge of circumstances which would cause a reasonable person in the position of the plaintiff to undertake an investigation which, if pursued with reasonable

---

5. Although *Waldman* was the first application of the discovery rule, the Court of Appeals suggested it as early as 1915. *Hahn v. Claybrook,* 130 Md. 179, 100 A. 83 (1915).

diligence, would have led to knowledge of the alleged tort.' "

*Pennwalt Corp. v. Nasios*, 314 Md. 433, 448–449, 550 A.2d 1155 (1988), quoting *O'Hara v. Kovens*, 305 Md. 280, 302, 503 A.2d 1313 (1986). With respect to negligence actions, the Court of Appeals stated:

> "To bring a negligence action, a plaintiff must prove: (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty by the defendant; (3) an injury to the plaintiff; and (4) that the injury was proximately caused by the defendant's breach of duty. We have previously held that limitations do not begin until a plaintiff knows or reasonably should know the nature and cause of his harm."

*Pennwalt*, 314 Md. at 453, 550 A.2d 1155 (citations omitted). Appellant argues that knowledge of the identity of the particular defendant who caused the harm is an essential part of his cause of action, and that the cause of action should not accrue until he learns the identity of that party. We do not agree.

Appellant was injured in May, 1986, and the allegedly negligent treatment by Basil occurred that same month. In August, 1986, appellant wrote a letter to his attorney, claiming that he had been improperly treated. In September, 1986, appellant's counsel wrote a letter to the State, requesting medical records and other information regarding appellant's treatment. We hold that appellant was aware of the circumstances surrounding his claim no later than September 8, 1986, and that he had three years from that date to bring suit against the proper parties.[6] Appellant did

---

6. In fact, appellant himself knew, prior to September 8, 1986, the identities of at least three individual persons who treated him when he was first injured. In his letter to counsel dated August 18, 1986, appellant listed three nurses who treated him for his initial injury (Ms. Lee, Ms. Hawkins, and Mr. Branch). Basil in its brief asserts that at least one of these persons was a Basil employee. Thus, upon receipt of appellant's August 18, 1986 letter, his counsel had sufficient

not amend his complaint before the HCAO to include Basil until January, 1990, more than three years later. On that basis, we hold that appellant's claim against Basil was barred by the three-year statute of limitations set forth in § 5–109 of the Courts and Judicial Proceedings Article.

Citing *Pennwalt,* appellant argues that his cause of action did not accrue until he had knowledge of the particular party who caused his injuries. We read *Pennwalt* to hold to the contrary. In that case, the United States District Court for Maryland certified the following question to the Court of Appeals:

> "Whether under the discovery rule, knowledge of the manufacturer's wrongdoing or of product defect is required, in addition to knowledge of possible causation, to trigger the statute of limitations in a medical products liability action."

*Pennwalt,* 314 Md. at 435, 550 A.2d 1155. After discussing the history and development of the discovery rule, the Court of Appeals answered the question as follows:

> "If the District Court used the word knowledge to mean clear and unequivocal proof that *a certain manufacturer's negligence* produced a defective product causing the plaintiff's injury, then we would answer the question no. If use of the term knowledge means express or implied knowledge of injury, its probable cause, and probable manufacturer wrongdoing or product defect, then we would answer the question yes."

*Pennwalt,* 314 Md. at 456–457, 550 A.2d 1155 (emphasis added). The Court of Appeals therefore held that knowledge of the identity of a particular defendant is not a necessary element to trigger the running of the statute of limitations. Although this is not a products liability action, we believe that this holding applies with equal if not greater force in a straight negligence action.

---

information upon which to determine that Basil was involved in the case.

Appellant's position is also rebutted, perhaps more directly, by the decision of the Court of Appeals in *Ferrucci v. Jack*, 255 Md. 523, 258 A.2d 414 (1969). In that case, plaintiff sued a corporation which owned an apartment complex for injuries incurred while on the apartment grounds. Only after the three-year statute of limitations had run did the plaintiff discover that the corporation did not own the apartment complex at the time he incurred his injuries. Nevertheless, the Court of Appeals held that the statute of limitations barred his claim. *Ferrucci*, 255 Md. at 525–526, 258 A.2d 414.

We hold that appellant's claim against appellee Frank Basil, Inc. was not brought within the three-year period mandated by § 5–109 of the Courts and Judicial Proceedings Article. The circuit court therefore correctly dismissed appellant's claim against Basil.

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART.

CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

COSTS TO BE PAID ONE–HALF BY THE STATE OF MARYLAND AND ONE–HALF BY APPELLANT.