725 A.2d 572

**Ruth E. YOUNG**

v.

**MEDLANTIC LABORATORY PARTNERSHIP**
**d/b/a Cytopathological Associates.**

**No. 415, Sept. Term, 1998.**

Court of Special Appeals of Maryland.

Feb. 2, 1999.

Reconsideration Denied April 5, 1999.

300

Denise J. Gottron (Ashcraft & Gerel, on the brief), Rockville, for Appellant.

James M. Heffler (Diane M. Fruchter and Godard, West Adelman, on the brief), Rockville, for Appellee.

Argued before MOYLAN, ADKINS, and THEODORE G. BLOOM (Retired, Specially Assigned), JJ.

THEODORE G. BLOOM, Judge, Retired, Specially Assigned.

Ruth E. Young appeals from an order issued by the Circuit Court for Montgomery County, dismissing her action against appellee, Medlantic Laboratory Partnership, on grounds that it was barred by the statute of limitations governing actions against health care providers. Maryland Code (1974, 1995 Repl.Vol., 1997 Supp.), § 5–109(a) of the Courts and Judicial Proceedings Article. Upon our careful review of the relevant law and facts, we shall reverse the circuit court's ruling.

## FACTUAL SUMMARY

On 19 November 1992, Ms. Young presented herself for a voluntary abortion to Dr. Alan J. Ross's office in Montgomery County, Maryland. A urine test established that Ms. Young was pregnant, and Dr. Ross performed an abortion procedure by suction curettage that day. After performing that procedure, he discharged her, and she scheduled a follow-up appointment in two weeks. The tissues extracted by the suction curettage were submitted to appellee.

Ten days after the procedure, on 29 November 1992, appellant was admitted to the emergency room at Holy Cross Hospital, complaining of severe abdominal pain. While there she was diagnosed as having an ectopic pregnancy, which is the development of the fetus outside of the uterus, in the fallopian tubes. An examination revealed that her right fallopian tube was in the process of rupturing. A right salpingectomy, the removal of the fallopian tube, was performed in emergency surgery. As a result of the surgery, appellant's reproductive capacity was diminished. On 16 November 1995, appellant filed a medical malpractice claim against Dr. Ross in the Health Claims Arbitration Office. In her claim, appellant alleged that Dr. Ross failed to properly diagnose and treat her ectopic pregnancy. Arbitration was waived, and the complaint

was transferred to the Circuit Court for Montgomery County on 30 May 1996. On 29 January 1997, Dr. Ross was deposed in connection with appellant's claim against him. During his deposition, Dr. Ross testified that he reviewed the pathology report on 1 December 1992, and that the report was probably received by him by mail that same day. He further testified that, upon discovering that there was no placental or fetal parts found in the specimen, appellee should have contacted him by telephone, instead of sending him a written report.

Based upon Dr. Ross' testimony, appellant filed a claim against appellee in the Health Claims Arbitration Office on 31 March 1997. Arbitration was waived, and the complaint was transferred to the Circuit Court for Montgomery County on 7 October 1997. Thereafter, the court granted appellant's motion to consolidate the two actions. Appellee filed a motion to dismiss the claim against it, pursuant to Maryland Rule 2–322, on the ground that the applicable statute of limitations barred her claim. The court granted appellee's motion. This appeal is from that dismissal.

## STANDARD OF REVIEW

In determining whether the trial court erred in granting the motion to dismiss, we are obliged to "accept as true all well-pleaded facts and allegations in the complaint[ ], together with reasonable inferences properly drawn therefrom." *Faya v. Almaraz,* 329 Md. 435, 443, 620 A.2d 327 (1993). Dismissal is proper only if the facts and allegations so viewed would fail to give plaintiff relief as a matter of law. *Id.* Thus, a motion to dismiss is proper when there is no "justiciable controversy[.]" *Broadwater v. State,* 303 Md. 461, 467, 494 A.2d 934 (1985). It is clearly inappropriate in the context of a motion to dismiss for the judge to make a finding of fact. *Morris v. Osmose Wood Preserving,* 99 Md.App. 646, 658, 639 A.2d 147 (1994), *rev'd on other grounds,* 340 Md. 519, 667 A.2d 624 (1995). Nonetheless, when a limitations defense is apparent on the face of the complaint, the complaint fails to state a cause of action upon which relief can be granted, and the opposing party may move for dismissal on that basis. *Subur-*

*ban Hosp. v. Dwiggins,* 83 Md.App. 97, 120–21, 573 A.2d 835, *rev'd on other grounds,* 324 Md. 294, 596 A.2d 1069 (1991).

## DISCUSSION

▮▮▮ The primary purpose of a statute of limitations is to ensure fairness by preventing stale claims. *Edmonds v. Cytology Services,* 111 Md.App. 233, 244, 681 A.2d 546 (1996). The statute of limitations applicable in this case is codified in Md.Code (1974, 1995 Repl.Vol., 1997 Supp.), § 5–109(a) of the Courts and Judicial Proceedings Article which provides:

> An action for damages for an injury arising out of the rendering of or failure to render professional services by a health care provider, as defined in § 3–2A–01 of this article, shall be filed within the earlier of:
>
> (1) Five years of the time the injury was committed; or
>
> (2) Three years of the date the injury was discovered.

The five-year maximum period under the statute has been interpreted to run its full length only in those instances when the three-year discovery provision does not bar an action at an earlier date. *Hill v. Fitzgerald,* 304 Md. 689, 700, 501 A.2d 27 (1985). The five-year limit, however, runs regardless of whether the injury was discovered or could have been reasonably discovered during that time. *Id.*

▮▮▮ Maryland recognizes the "discovery rule," whereby a cause of action accrues at the time the claimant first knew or reasonably should have known of the alleged wrong. *See Poffenberger v. Risser,* 290 Md. 631, 636, 431 A.2d 677 (1981). Actual knowledge, either expressed or implied, is required. *Poffenberger,* 290 Md. at 637, 431 A.2d 677. Actual knowledge has been defined as

> knowledge of circumstances which ought to have put a person of ordinary prudence on inquiry [thus, charging the individual] with notice of all facts which such an investigation would in all probability have disclosed if it had been properly pursued. In other words, a [plaintiff] cannot fail to investigate when the propriety of the investigation is naturally suggested by circumstances known to him; and if he

neglects to make such inquiry, he ... must suffer from his neglect.

*Id.* (citations omitted). *See also O'Hara v. Kovens,* 305 Md. 280, 302, 503 A.2d 1313 (1986).

Asserting that appellant was aware that she had been injured when, on 29 November 1992, she learned that she suffered a ruptured right ectopic pregnancy as a result of an unsuccessful abortion, appellee argues to this Court, as it did below, that "Maryland courts have long held that the right of action for malpractice accrues when the patient knows, or should know, that he or she has suffered damage." Appellee cites *Waldman v. Rohrbaugh,* 241 Md. 137, 215 A.2d 825 (1966), as authority for that legal proposition. By taking a sentence from Judge Hammond's opinion in *Waldman* out of context and omitting one key word from it, appellee has inadvertently distorted the meaning of that opinion. The gist of the holding in *Waldman* is contained in the penultimate paragraph of the opinion, which states:

> On reason and principle and the authority in *Hahn* [*v. Claybrook,* 130 Md. 179, 100 A. 83 (1917)] and cases of like import elsewhere which have been cited and referred to, we conclude that the right of action for injury or damage from malpractice may accrue when the patient knows or should know he has suffered injury or damage. In many cases he will or should know at the time of or soon after the wrongful act that he has been the victim of negligent medical care; in other settings of fact it may be impossible for him, as a layman, unskilled in medicine, reasonably to understand or appreciate that actionable harm has been done to him. If this is fairly the fact, we think he should have the statutory time from the moment of discovery, the moment he knows or should know he has a cause of action, within which to sue.

In a medical malpractice case, the element of harm is the last to occur, but, as this case illustrates, that element is not necessarily the last to be discovered. Under the discovery rule, a cause of action *accrues* (thereby triggering the limita-

tions period) when the patient discovers, or should have discovered, that he or she has a cause of action.

*Waldman* is consistent with more recent cases that explain the discovery rule and the accrual of a cause of action. In *Owens–Illinois v. Armstrong,* 326 Md. 107, 120–21, 604 A.2d 47 (1992), an asbestos-related injury case, the Court of Appeals, quoting from the earlier case of *Harig v. Johns–Manville Products,* 284 Md. 70, 83, 394 A.2d 299 (1978), stated that "a plaintiff's cause of action *accrues* when he ascertains, or through the exercise of reasonable care and diligence should have ascertained, the nature and cause of his injury." (Emphasis added in *Armstrong.)* In *Harig,* the Court compared an asbestos related injury to a medical malpractice injury and reasoned that "a person incurring disease years after exposure cannot have known of the existence of the tort until some injury manifests itself. In neither case can the tort victim be charged with slumbering on his rights, for there is no notice of the existence of a cause of action." 284 Md. at 80, 394 A.2d 299.

■■■ "[A] cause of action in negligence or strict liability *arises* 'when facts exist to support each element.'" *Armstrong,* 326 Md. at 121, 604 A.2d 47, quoting from this Court's opinion in *Owens–Illinois v. Armstrong,* 87 Md.App. 699, 724–25, 591 A.2d 544 (1991). (Emphasis added). "In a negligence claim, the fact of injury would seemingly be the last element to come into existence. The breach, duty, and causation elements naturally precedes the fact of injury." 326 Md. at 121, 604 A.2d 47. It is clear therefore, that a medical malpractice cause of action arises when harm results from the tortious act, but it *accrues,* and the statute of limitations begins to run, when the patient is aware, or in the exercise of due care and diligence should be aware, that the cause of action has *arisen,* that the medical care provider has breached a duty owing to the patient and that harm to the patient has resulted from that breach.

■■■ In this case, appellant was unquestionably aware of the harm element as of 29 November 1992. She then was

aware that Dr. Ross, having undertaken a duty to perform an abortion, had not succeeded in doing so and that harm—a ruptured ectopic pregnancy—had resulted from that failure. It was not until about four years later, however, that she learned, during a deposition of Dr. Ross, that appellee had allegedly breached a separate duty of due care to her by failing to notify Dr. Ross expeditiously that there was no fetal tissue in the matter he had removed from appellant by suction curettage.

Appellee, relying on *Conaway v. State,* 90 Md.App. 234, 600 A.2d 1133 (1992), argues that knowledge of the identity of the defendant that allegedly caused the harm suffered by appellant was not required to trigger the running of the statute of limitations. Appellee's reliance on *Conaway* is misplaced. In *Conaway,* a prisoner in the custody of the Maryland Division of Correction suffered a broken finger which, allegedly as a result of improper medical treatment, was permanently disfigured and painful. He filed a claim against the State, pursuant to the Maryland Tort Claims Act. Eventually, the State denied the claim, asserting that the required notice of the intention to file a claim was defective because it did not demand specific damages. The State moved to dismiss Conaway's formal claim filed with the Health Claims Arbitration Office (HCAO) on two grounds: the failure of his notice letter to comply with the Tort Claims Act (no specific claim of damages) and his failure to exhaust his administrative remedies by filing a claim with the Inmate Grievance Commission. As a result of his investigation of the State's assertions, Conaway learned that the medical treatment he received for his broken finger was furnished by a company with which the State had contracted, and not by State employees. Conaway amended his HCAO complaint to include PHP Healthcare Corporation, the State's then present service provider. He later learned that Frank Basil, Inc., not PHP, was the health care provider that had treated him. He then amended his complaint to assert a claim against Basil. The HCAO granted the State's and Basil's motions to dismiss, ruling that Conaway's notice letter to the State was defective and that his claim against Basil, filed more

than three years after the harmful effects of the medical treatment were known, was barred by limitations. Conaway rejected the decision of the HCAO and filed a complaint against the State and Basil in the Circuit Court for Baltimore City. That court granted the defendants' motions to dismiss, which were similar in content to the motions they had filed in the HCAO. Conaway then appealed to this Court.

With respect to the limitations defense of Basil, this Court, on the basis of the decisions of the Court of Appeals in *Pennwalt Corp. v. Nasios,* 314 Md. 433, 550 A.2d 1155 (1988), and *Ferrucci v. Jack,* 255 Md. 523, 258 A.2d 414 (1969), held that Conaway's claim against Basil was barred by limitations, stating that "knowledge of the identity of a particular defendant is not a necessary element to trigger the running of the statute of limitations." 90 Md.App. at 253, 600 A.2d 1133.

In *Conaway,* the plaintiff knew more than three years before he filed a claim against Basil that he had been injured by the allegedly negligent medical care afforded him at the Maryland Division of Correction Brockridge facility in Jessup; he merely did not know the name of the physician who had treated him. In this case, appellant filed a claim against appellee within three years after discovery that appellee allegedly contributed to her harm by negligently failing to inform Dr. Ross expeditiously, by telephone, that his suction curettage procedure had not terminated appellant's pregnancy. Conaway was aware, more than three years before he filed a claim against Basil, that he had been wronged and harmed by the physician who had treated his broken finger; Ms. Young knew by 29 November 1992 of the allegedly negligent failure of Dr. Ross to successfully perform the contracted for abortion; it was not until about four years later that she discovered that appellee had allegedly committed a separate tort—breach of a distinct duty—that caused or contributed to the cause of her harm.

Appellant did not actually discover that she had a cause of action against appellee until Dr. Ross asserted, in his deposition, that he did not receive appellee's written laboratory

report until after appellant's ruptured ectopic pregnancy and that appellee was negligent in not notifying him promptly by telephone that there was no fetal tissue in the pathology specimens. Whether the circuit court erred in dismissing her complaint against appellee on the ground that it was barred by limitations, therefore, depends on whether at some earlier time she had "knowledge of circumstances which would cause a reasonable person in the position of the plaintiff[ ] to undertake an investigation which, if pursued with reasonable diligence, would have led to knowledge of the alleged [wrong]." *O'Hara v. Kovens*, 305 Md. at 302, 503 A.2d 1313.

Appellee contends that appellant was on inquiry notice of her injury, sufficient to warrant a diligent investigation, no later than 29 November 1992, when she suffered a ruptured ectopic pregnancy, and that a diligent investigation presumably would have included a review of Dr. Ross's medical records. Those records include appellee's written pathology report, which contains Dr. Ross's handwritten notation that he did not review the report until 1 December 1992. From that notation, appellee argues, appellant would have learned that there was a delay in communicating the laboratory results to Dr. Ross. We perceive no logic in that argument.

From the fact that she had an ectopic pregnancy that was not terminated by the suction curettage, appellant had a basis to believe that she had a cause of action against Dr. Ross for failing to diagnose her condition properly and, as a result, for failing to terminate her pregnancy as he had contracted to do. Even if appellant or her counsel had examined Dr. Ross's records much sooner than they did, they would have found appellee's written report, dated 24 November 1992, with Dr. Ross's handwritten notation that he reviewed the report on 1 December 1992. It would not have been illogical or unreasonable for appellant to assume, from the disparity between the date of the report and the date Dr. Ross read it, that appellee transmitted its report in time for Dr. Ross to have taken steps to prevent the rupture of her fallopian tube, but that Dr. Ross delayed reading it. That interpretation would have been

entirely consistent with the theory already subscribed to: Dr. Ross was negligent.

Was it unreasonable for appellant not to have pursued a prompt and diligent investigation to determine whether anyone other than Dr. Ross was responsible for her injury? Would an investigation, without filing suit against Dr. Ross and then taking his deposition much earlier than appellant did, have disclosed that, according to Dr. Ross, the written report was late getting to him and that due care on the part of appellee required appellee to telephone him immediately to report the laboratory results? Was it a lack of due diligence by appellant or a failure by her to act reasonably to wait until limitations was about to expire before filing her claim against Dr. Ross? We do not believe that any of those questions can be answered in the affirmative as a matter of law.

Waiting about a year after filing a claim against Dr. Ross before taking his deposition obviously did not contribute to any failure to file this claim within three years after the cause of action accrued. If appellant were on such inquiry notice as to amount to accrual of her cause of action in November 1992, the three-year limitations period expired almost immediately after the claim against Dr. Ross was filed, and his deposition could not have been scheduled and taken in time to avoid the running of the statute with respect to a claim against appellee.

In several cases, the Maryland Court of Appeals has held that the question of whether a plaintiff acted with due diligence in bringing his or her cause of action is a question best left to the jury and is not an appropriate basis for a summary judgment motion. In *Baysinger v. Schmid Products Co.*, 307 Md. 361, 367–68, 514 A.2d 1 (1986), the Court of Appeals held:

> [W]hile the record indicates that [plaintiff] entertained various suspicions concerning the cause of her illness, there is no evidence that she then suspected, or reasonably should have suspected, wrongdoing on the part of anyone. Whether a reasonably prudent person should then have undertaken a further investigation is a matter about which reason-

able minds could differ, and it was therefore inappropriate for resolution by summary judgment.

In *O'Hara*, 305 Md. at 301–05, 503 A.2d 1313, the Court held that the question of whether the plaintiffs were on inquiry notice of their cause of action more than three years before filing suit was a question of fact and, therefore, the trial court erred in granting summary judgement.

The central question before us is whether a reasonable trier of fact could find that appellant lacked actual knowledge or inquiry notice that her ruptured ectopic pregnancy may have been caused by appellee's negligent act in sending the results of her pathology report by mail to Dr. Ross, instead of telephoning him.

That question boils down to this: What would constitute due diligence, or what should be expected of a "reasonable" person in appellant's circumstances upon suffering a ruptured ectopic pregnancy after a failed attempt to perform an abortion by suction curettage? Lawyers and judges, by virtue of their legal training and experience and the expertise acquired thereby, might conclude that appellant was not sufficiently diligent because a thorough and vigorous investigation culminating with the prompt filing of a claim against Dr. Ross and a quick scheduling of his deposition, would have led to an earlier discovery of a cause of action against appellee. But judges and lawyers may not be the best persons to determine what constitutes due diligence by a reasonable person in appellant's circumstances.

The English writer G.K. Chesterton, after serving on a jury in a criminal case, reached the following astute conclusion:

Our civilization has decided, and very justly decided, that determining the guilt or innocence of men is a thing too important to be trusted to trained men. It wishes for light upon that awful matter, it asks men who know no more law than I know, but who can feel the things that I felt in the jury box. When it wants a library catalogued, or the solar system discovered, or any trifle of that kind, it uses up its specialists. But when it wishes anything done which is

really serious, it collects twelve of the ordinary men standing around. The same thing was done, if I remember right, by the Founder of Christianity.[1]

This case, of course, is a civil action, not a criminal prosecution; the issue is not guilt or innocence but reasonableness and diligence; and, in Maryland, the jury in a civil action consists of six rather than twelve persons. Nevertheless, Chesterton's observation has applicability to this case. Whether the issue of fact is guilt or innocence, or reasonableness of conduct under existing circumstances, a group of lay persons is a far better judge of the facts than a single legal expert. Jurors bring to their findings of fact an accumulation of life experiences in a variety of circumstances that cannot be matched by the limited experience of a single person, no matter how learned in his or her field.

We conclude, consistent with the observations of the Court of Appeals in *Baysinger, supra,* and *O'Hara, supra,* that the trial court erred in deciding, as a matter of law, that appellant's claim was barred by the statute of limitations. We believe that reasonable minds could differ over whether appellant should have further investigated into the matter sooner or more completely; whether she failed to exercise the degree of diligence that a reasonable person in her circumstance would have exercised; or whether any reasonable exercise of diligence under the circumstances would have led to an earlier discovery of appellee's breach of duty.

**JUDGMENT REVERSED.**

**COSTS TO BE PAID BY APPELLEE.**

---

1. G.K. Chesterton, *Tremendous Trifles, The Twelve Men.*